**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Donald J. Hardge, | No. CV-08-2173-PHX-GMS |
| Plaintiff, | **ORDER** |
| vs. | |
| Golden Eagle Distributors, Inc., | |
| Defendant. | |

Pending before this Court are a Motion for Summary Judgment (Doc. 36) and Motion to Strike (Doc. 40) filed by Defendant Golden Eagle Distributors, Inc. ("GED").[1] For the reasons set forth below, the Court grants Defendant's Motion for Summary Judgment (Doc. 36) and grants in part and denies in part Defendant's Motion to Strike (Doc. 40).

## BACKGROUND

Plaintiff Donald J. Hardge ("Hardge") filed a Complaint alleging discrimination in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981. Specifically, Hardge, an African American, claims that GED terminated him for racially-motivated and discriminatory reasons.

Plaintiff worked as a warehouseman with GED, a company that sells and distributes

---

[1] Golden Eagle's Motion for Summary Disposition on its Motion to Strike and Motion for Summary Judgment (Doc. 43) is moot because the Court accepts Plaintiff's late response to Defendant's Motion for Summary Judgment and Motion to Strike (Doc. 44).

Budweiser and Anheuser-Busch products throughout Arizona. His responsibilities included moving and stocking merchandise, loading and unloading trucks, and stacking empty pallets. Plaintiff's immediate supervisor was Elias Mendoza. Plaintiff and Mendoza appear to have had several disagreements which required the intervention of branch managers through a series of meetings.

On January 5, 2006, the day Plaintiff was terminated, Mendoza saw Plaintiff stacking empty pallets inappropriately in a manner inconsistent with GED policy, and asked him to re-stack the pallets. Plaintiff questioned the directive and felt that "[Mendoza] was wasting time." (Doc. 37, Ex. B, p.98). Mendoza responded, "if you're not going to do your job, [then] leave." (*Id*. at 96). Plaintiff then called the branch manager, J. Michael Oglesbee, who instructed him to either do as Mendoza instructed or to clock out. After Plaintiff clocked out, and while in the presence of co-workers, he asked Mendoza, "are you a f****** idiot?" and laughed at him. Plaintiff was terminated by Oglesbee for "[r]efusal to perform duties as assigned by team leader / insubordination." (Doc. 37, Ex. L).

**DISCUSSION**

**I.    Legal Standard**

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2). Substantive law determines which facts are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "A fact issue is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson,* 477 U.S. at 248). When the nonmoving party "bear[s] the burden of proof at trial as to an element essential to its case, and that party fails to make a showing sufficient to establish a genuine dispute of fact with respect to the existence of that element, then summary judgment is appropriate." *Cal. Architectural Bldg. Prods., Inc. v. Franciscan*

*Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

**II.     Analysis**

    **A.     Motion to Strike**

GED moves to strike Plaintiff's response to GED's Statement of Facts and Plaintiff's Separate Statement of Facts. (Doc. 40). Under Local Rule 7.2(m), a party can move to strike "any part of a filing or submission on the ground that it is prohibited (or not authorized) by a statute, rule, or court order."

Plaintiff's response to Defendant's Statement of Facts does not comply with Local Rule 56.1(b), which requires a party opposing a motion for summary judgment to file a statement setting forth "for each paragraph of the moving party's statement of facts, a correspondingly numbered paragraph indicating whether the party disputes the statement of facts set forth in that paragraph and a reference to the specific admissible portion of the record supporting that party's position if the fact is disputed." Plaintiff's cursory response to Defendant's Statement of Facts neither identifies which, if any, of GED's specific facts he controverts, nor does it reference any specific admissible portion of the record to contradict GED's facts. Accordingly, the Court strikes Plaintiff's response to Defendant's statement of facts (Doc. 39) and, in accordance with Local Rule 56.1(b), Defendant's statement of facts are deemed admitted for purposes of the motion for summary judgment.

Local Rule 56.1(b) further requires a party opposing summary judgment to set forth "any additional facts that establish a genuine issue of material fact or otherwise preclude judgment in favor of the moving party. Each additional fact shall be set forth in a separately numbered paragraph and shall refer to a specific admissible portion of the record where the fact finds support." In lieu of setting forth his own statement of facts, Plaintiff submits an affidavit. In its discretion, the Court may accept a plaintiff's affidavit instead of a separate statement of facts. However, consistent with Defendant's motion, the Court strikes those

1 portions of Plaintiff's affidavit that are in violation of the sham affidavit rule,[2] not based on 2 his personal knowledge, or are irrelevant. For example, Hardge's statements concerning 3 Mendoza's alleged stealing of gas (¶ 4–6) and Plaintiff's lack of training and/or awareness 4 of GED's policy with respect to the stacking of pallets (¶ 17–22) are stricken for irrelevancy.[3] 5 Similarly, Plaintiff's allegations in paragraphs 35, 38-39, and 42-43 are stricken because 6 they are not based on Plaintiff's personal knowledge. Finally, Plaintiff's allegations in 7 paragraph 27 violate the sham affidavit rule because in his deposition testimony Plaintiff 8 states that he did not tell Human Resources ("HR") that there was ongoing harassment 9 between him and Mendoza (Doc. 37, Ex. B, p. 136), whereas in his affidavit Plaintiff 10 indicates telling HR that "Mendoza had made racial remarks and comments; was overly 11 critical of me compared to non-black employees; and singled me out for discipline while 12 ignoring similar or more serious infractions by other employees." Accordingly, the Court 13 only accepts Plaintiff's affidavit to the extent that it is relevant, based on personal 14 knowledge, and not in violation of the sham affidavit rule.

15 The only other evidence submitted by Plaintiff is an Arizona administrative law 16 judge's ("ALJ") finding, dated April 2006. However, A.R.S. § 23-672.01 bars the 17 introduction of this ALJ decision. The statute states that a finding of fact or law by an ALJ 18 "is not conclusive or binding in any separate or subsequent action or proceeding and shall 19 not be used as evidence in any separate or subsequent action or proceeding between an 20 individual and the individuals' . . . former employer brought before [a] court or judge of . . 21 . the United States." Accordingly, the ALJ's findings are disregarded for purposes of

---

23 [2] A party cannot create an issue of fact by an affidavit contradicting his prior 24 deposition testimony if the affidavit is a sham produced merely to avoid summary judgment. *See, e.g., Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262 (9th Cir. 1991).

25
26 [3] For the purposes of this Motion, Defendant concedes that prior to January 5, 2006, Plaintiff had not been trained to build stacks of 14 pallets on 14 pallets. Nonetheless, the 27 undisputed evidence confirms that Plaintiff's job duties included stacking empty pallets, and that on the day of the incident Mendoza instructed him to build the pallets in stacks of 14 in 28 compliance with GED's policy.

- 4 -

1 summary judgment and the portions of Plaintiff's affidavit which rely on the ALJ decision
2 are similarly stricken. *See* Doc. 39, ¶ 32–33, 50.

3       The Court grants in part and denies in part Defendant's Motion to Strike Plaintiff's
4 Response to Defendant's Statement of Facts and Plaintiff's Separate Statement of Facts.
5 Because Plaintiff has not contradicted, for the most part, any of Golden Eagle's facts with
6 admissible evidence, the uncontradicted facts set forth by GED and supported by admissible
7 evidence are deemed admitted for purposes of this motion.

8       **B.**    **Title VII and 42 U.S.C. § 1981 Claims**

9       Plaintiff claims he was terminated illegally because of his race and seeks to recover
10 damages pursuant to 42 U.S.C. § 1981 and Title VII. Title VII of the Civil Rights Act of 1964
11 prohibits employment discrimination on account of race. 42 U.S.C. § 2000e-2(a) ("It shall be
12 an unlawful employment practice for an employer . . . to discharge any individual . . . because
13 of such individual's race, color, religion, sex, or national origin."). Similarly, section 1981
14 "guarantees 'all persons' the right to 'make and enforce contracts.'" *Johnson v. Riverside*
15 *Healthcare Sys., LP*, 534 F.3d 1116, 1122 (9th Cir. 2008) (citing 42 U.S.C. § 1981(a)). Title
16 VII claims and claims based on 42 U.S.C. § 1981 may be addressed together, because § 1981
17 claims are analyzed under the same framework as Title VII claims. *See Surrell v. Cal. Water*
18 *Serv. Co.*, 518 F.3d 1097, 1103 (9th Cir. 2008); *see also White v. AKDHC, LLC*, 664
19 F.Supp.2d 1054, 1067 (D. Ariz. 2009).

20       As the Supreme Court set forth in *McDonnell Douglas*, there are four elements a
21 plaintiff must satisfy in order to establish a prima facie case of racial discrimination.
22 *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). "[T]he plaintiff must show that (1)
23 he belongs to a protected class; (2) he was qualified for the position; (3) he was subject to an
24 adverse employment action; and (4) similarly situated individuals outside his protected class
25 were treated more favorably." *Id.*; *Moran v. Selig*, 447 F.3d 748, 753 (9th Cir. 2006). The
26 proof required to establish the prima facie case is "minimal and does not even need to rise to
27 the level of a preponderance of the evidence." *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889
28 (9th Cir. 1994). Nevertheless, Plaintiff "must offer evidence that 'give[s] rise to an inference

1  of unlawful discrimination,' either through the framework set forth in *McDonnell Douglas* or
2  with direct or circumstantial evidence of discriminatory intent." *Vasquez v. Cnty. of L.A.*, 349
3  F.3d 634, 640 (9th Cir. 2004). In the event that the plaintiff is able to establish a prima facie
4  case, "the burden of production, but not persuasion" then shifts to the defendant to offer a
5  legitimate non-discriminatory reason for the employment action. *Chuang v. Univ. of Cal.-*
6  *Davis*, 225 F.3d 1115, 1123–24 (9th Cir. 2000). If the employer is able to articulate a non-
7  discriminatory reason, the burden shifts back to the plaintiff, who must be "afforded a fair
8  opportunity to show that [the] stated reason for [the challenged action] was in fact pretext."
9  *McDonnell Douglas*, 411 U.S. at 804. If the plaintiff wishes to show indirectly that the
10 employer's reason is "unworthy of credence," the plaintiff's evidence must be "specific" and
11 "substantial" in order to create a triable issue. *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217,
12 1222 (9th Cir. 1998). The Ninth Circuit has refused to find a "genuine issue" where the only
13 evidence presented is "uncorroborated and self-serving" testimony. *Kennedy v. Applause,*
14 *Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996).

### 1. **Prima Facie Showing of Racial Discrimination**

16 Under the *McDonnell Douglas* framework, Plaintiff has failed to establish a prima
17 facie case of racial discrimination. Specifically, Plaintiff has not demonstrated the fourth
18 element – "similarly situated individuals outside his protected class were treated more
19 favorably." To show that the employees allegedly receiving more favorable treatment are
20 similarly situated, Plaintiff "must demonstrate, at least, that [he is] similarly situated to those
21 employees in all material respects." *Moran*, 447 F.3d at 755. Individuals are similarly situated
22 when "they have similar jobs and display similar conduct." *Vasquez*, 349 F.3d at 641. Plaintiff
23 relies on four alleged incidents to demonstrate that non-protected class employees received
24 more favorable treatment: 1) denial of bereavement leave while employees David and Joey
25 Hodges were granted similar leave; 2) harsher disciplinary action in response to a loading
26 mistake that two other employees were also involved in; 3) insufficient disciplinary action
27 when Harrington, a white employee, tried to run over Plaintiff; 4) no disciplinary action taken
28 against Christopher Clements, the company CEO, for crashing into Plaintiff's parked car

- 6 -

1  while allegedly driving under the influence.[4]

2  Plaintiff has provided no admissible evidence to support his alleged denial of
3  bereavement leave in April 2003, when his mother died, while maintaining that employees
4  Joey and David Hodges were granted leave. Meanwhile, Mendoza's sworn affidavit indicates
5  that Hardge was granted bereavement leave in accordance with GED policy but that he chose
6  to return to work earlier. (Doc. 37, Ex. N). The affidavit of Cyndy Valdez, Vice President and
7  General Counsel for GED, also states that neither Joey nor David Hodges ever requested
8  bereavement leave because the former was not an employee of GED at the time his
9  grandmother passed away, and the latter did not request leave. (Doc. 37, Ex. M).

10  Plaintiff further alleges that GED handled disciplinary measures in a racially
11  discriminatory manner. Specifically, he alleges that he received harsh disciplinary action, a
12  write-up and verbal counseling, for a load mistake in May 2004. However, this allegation does
13  not demonstrate that similarly situated employees were treated more favorably where Plaintiff
14  admits in his deposition that he does not know whether two other employees who were
15  equally responsible for the mistake were verbally warned and similarly written up after the
16  incident. (Doc. 37, Ex. B, p. 112). Speculation as to how similarly situated employees may
17  or may not have been treated does not "give rise to an inference of unlawful discrimination."

18  Plaintiff also attempts to demonstrate the more favorable treatment of others by
19  alleging that when a GED employee, Steve Harrington, tried to run him over in the company
20  parking lot, Harrington was merely reassigned to a different location rather than terminated.
21  In his sworn affidavit, Mendoza states that he investigated Hardge's allegations and the
22  incident "and could not find any conclusive evidence of wrongdoing." (Doc. 37, Ex. N).
23  Although Mendoza concluded that this was a "'he said/he said' situation," "in an abundance

---

25  [4] In his deposition, Plaintiff suggests that Bob Murrieta and Joey Hodges, two other
26  GED employees, were also not terminated after engaging in serious misconduct. Plaintiff
   does not address either of these allegedly similarly situated individuals in his Response to
27  Defendant's Motion for Summary Judgment. Nevertheless, the incidents involving these two
   employees related to off-site activities and are not comparable to Plaintiff's misconduct in
28  all material respects.

- 7 -

1  of caution, [he] reassigned Harrington to the field to defuse the situation." (*Id*.). Plaintiff has
2  not provided any admissible evidence to the contrary.

3  Finally, Plaintiff alleges that Christopher Clements, GED's CEO, crashed his vehicle
4  into Hardge's parked car after drinking at a company holiday party. Plaintiff alleges that there
5  is no evidence that Clements was disciplined for his actions, and that Gary Wesnitzer, the
6  branch manager at the time, allegedly told Hardge to give false statements about the incident
7  if he were asked about it by the police. Employees in supervisory positions are generally
8  deemed not to be similarly situated to lower level employees. *See Vasquez*, 349 F.3d at 641
9  (citing *Ward v. Procter & Gamble Paper Prods. Co.*, 111 F.3d 558, 560–61 (8th Cir. 1997)).
10 In this case, the two individuals were clearly not similarly situated because Hardge was a
11 warehouseman while Clement was the company's CEO.

12 Based on the absence of any evidence of disparate treatment in the record, and
13 Plaintiff's admissions pursuant to Local Rule 56.1(b), the Court finds that no other employee
14 engaged in conduct similar to Hardge and received less severe discipline. Plaintiff has neither
15 offered evidence that gives rise to an inference of unlawful discrimination under the
16 *McDonnell Douglas* framework nor has he offered any direct or circumstantial evidence of
17 discriminatory intent. Accordingly, Hardge's prima facie showing of racial discrimination
18 fails for lack of showing that similarly situated employees not in his protected class received
19 more favorable treatment.

### 2. Legitimate Non-Discriminatory Reason

21 Even if Plaintiff had satisfied his burden of establishing a prima facie case, Defendant
22 has offered a legitimate, non-discriminatory reason for the termination: "[r]efusal to perform
23 duties as assigned by team leader/insubordination." (Doc. 37, Ex. L). Specifically, Plaintiff
24 testifies that GED told him he was being terminated for using profanity, violating a safety
25 policy, and failure to reply to a reasonable request by his supervisor. (Doc. 37, Ex. B, p.
26 14–15). Defendant's proffered reason is supported by admissible evidence, including
27 Hardge's own testimony, wherein he admits his prior disrespectful treatment of his supervisor,
28 including shaking his head at Mendoza and not waiting for him to finish his sentence when

1 he gave him instructions with which he disagreed. (*Id.* at 119–20). Hardge further admits that on the day he was terminated he used profanity in addressing his supervisor and then laughed at him while in front of co-workers. (*Id.* at 97–98). Hardge testifies that he reacted in this way because Mendoza was wasting his time. (*Id.*). Defendant's non-discriminatory reason for terminating Hardge is further bolstered by Plaintiff's admission that over the years he had disagreements with Mendoza over his management style. (*Id.* at 117). The troubled relationship between Mendoza and Hardge is further apparent from the series of meetings held between the two individuals and various GED branch managers to resolve the conflict between them. (*Id.* at 84–85, 118; Doc. 37, Ex. D, E). Hardge admits that during these meetings he was repeatedly reminded that Mendoza was his supervisor. (Doc. 37, Ex. B, p.118–19).

Plaintiff's serious misconduct qualifies as a legitimate and non-discriminatory reason for his termination. *See Unt v. Aerospace Corp.*, 765 F.2d 1440, 1446 (9th Cir. 1985) ("An employee is not protected by Title VII when he violates legitimate company rules, knowingly disobeys company orders, disrupts the work environment of his employer, or willfully interferes with the attainment of the employer's goals.") Accordingly, GED has satisfied its burden of articulating a legitimate non-discriminatory reason for the challenged action. *See McDonnell Douglas*, 411 U.S. at 802.

### 3. Pretext

Because GED has proffered a legitimate, non-discriminatory reason for the termination, Plaintiff must prove that GED's reason is pretextual. A plaintiff can show pretext directly, by showing that discrimination more likely motivated the employer, or indirectly, by showing that the employer's explanation is unworthy of credence. *Chuang*, 225 F.3d at 1127. As discussed above, Plaintiff has offered no direct admissible evidence that GED was more than likely motivated by racial animus. Further, to indirectly show that the employer's reason is "unworthy of credence," the plaintiff's evidence must be "specific" and "substantial." *Villiarimo*, 281 F.3d at 1062.

Plaintiff fails to meet his burden of offering "specific" and "substantial" evidence that

- 9 -

insubordination and use of profanity with his supervisor was pretext for a racially-motivated termination. Plaintiff's allegation that Mendoza often made racially hostile and inappropriate remarks which were never taken seriously by the management lacks the support of any admissible evidence (Doc. 37, Ex. I), and, as a result, does not create a genuine issue. *See Kennedy*, 90 F.3d at 1481 (finding no genuine issue where only evidence presented is "uncorroborated and self-serving" testimony); *see also Mondero v. Salt River Project*, 400 F.3d 1207, 1213 (9th Cir. 2005) ("Stray remarks not acted upon or communicated to a decision maker are insufficient to establish pretext."). Furthermore, Plaintiff's allegations in his affidavit that Wesnitzer excused Mendoza's alleged racist remarks and treatment when Plaintiff complained to him "on numerous occasions" is neither sufficient nor substantial enough to establish pretext where Oglesbee, not Wesnitzer, made the ultimate decision to terminate Hardge. (Doc. 39, ¶ 24–25).

The undisputed evidence refutes any showing that GED's reasons for terminating Hardge were pretextual. Specifically, in his deposition testimony and EEOC rebuttal letter, Plaintiff admits that he had "issues with Elias Mendoza on numerous occasions" and that he verbally abused Mendoza by swearing and laughing at him while in front of co-workers. (Doc. 37, Ex. B, p. 98, 171; Ex. F). Hardge further admits that he reacted in this way after Mendoza asked him to stack the pallets differently, a task which he considered a waste of time. (*Id.* at 96, 98). Further, Plaintiff admits in his deposition that he was aware of company policy requiring him to conduct himself in a positive manner in order to promote the best interest of GED and that refusing to follow a supervisor's instructions concerning a job-related task could cause him to be disciplined up to and including termination. (*Id.* at. 56–57).

Thus, Plaintiff has failed to meet his burden of establishing an issue of fact as to pretext by raising "specific" and "substantial" circumstantial evidence that GED's proffered legitimate and non-discriminatory reason for discharge was pretextual. As a result, Defendant is entitled to summary judgment on the Title VII and § 1981 racial discrimination claims.

## CONCLUSION

Plaintiff has not demonstrated a prima facie case of discrimination. Alternatively,

1  GED has demonstrated a legitimate non-discriminatory reason for terminating Hardge, a
2  reason that was non-pretextual.
3      **IT IS THEREFORE ORDERED** that the Motion for Summary Judgment (Doc.
4  36) filed by Defendant Golden Eagle Distributors, Inc. is **GRANTED**.
5      **IT IS FURTHER ORDERED** that Defendant's Motion to Strike (Doc. 40) is
6  **GRANTED IN PART AND DENIED IN PART**.
7      **IT IS FURTHER ORDERED** that Defendant's Motion for Summary Disposition
8  on its Motion to Strike and Motion for Summary Judgment (Doc. 43) is **DENIED** as
9  **MOOT**.
10     The Clerk of the Court is directed to terminate this action.
11     DATED this 22nd day of December, 2010.

*H. Murray Snow*
G. Murray Snow
United States District Judge

- 11 -